UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-23697-Civ-COOKE/TORRES

BRENT WOLF,

    Plaintiff,

vs.

CELEBRITY CRUISES, INC. d/b/a
CELEBRITY CRUISES, and THE
ORIGINAL CANOPY TOURS,

    Defendants.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Brent Wolf ("Plaintiff" or "Mr. Wolf") brings this action to recover damages plus interest and costs from Defendant Celebrity Cruises, Inc. ("Defendant" or "Celebrity") for injuries he sustained while zip lining during a shore excursion in Costa Rica. *See generally* Compl., ECF No. 1. Defendant Celebrity filed a Motion for Summary Judgment (ECF No. 65) and Statement of Undisputed Facts in Support of its Motion for Summary Judgment (ECF No. 66), contending that Plaintiff is unable to establish his claims of negligence, apparent agency, joint venture, actual agency, or breach of third party beneficiary contract. Plaintiff Brent Wolf filed his Response in Opposition to Celebrity Cruises' Motion for Summary Judgment (ECF No. 81), to which Defendant filed its Reply in Support of its Motion for Summary Judgment (ECF No. 83). Therefore, Defendant's Motion for Summary Judgment is fully briefed and ripe for adjudication.

I have reviewed Defendant's Motion for Summary Judgment and accompanying attachments, Plaintiff's Response and accompanying attachments, Defendant's Reply and accompanying attachments, the record, and the relevant legal authorities. I agree that Plaintiff is unable to establish his claims against Celebrity. Therefore, Defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND

### *a. The Cruise, the Disclaimers, and the Accident*

This action arises from injuries Mr. Wolf sustained in October 2012 while participating in an offshore zip line excursion tour in Costa Rica during a cruise aboard the Celebrity *Infinity*. Plaintiff set sail on the Celebrity *Infinity* on October 8, 2012 with his wife, Patricia Cannon, and family friend, Beverly Falor. Def.'s Statement Undisputed Facts ¶ 1; Pl.'s Resp. ¶ 1. Ms. Cannon purchased tickets for herself and Mr. Wolf through a travel agent. Def.'s Statement Undisputed Facts ¶ 2. In connection with that ticket purchase, Mr. Wolf received and signed Celebrity's Cruise/Cruisetour Ticket Contract ("Cruise Ticket Contract"). Wolf Dep. 54:21-55:19, Nov. 5, 2014. With respect to shore excursions, paragraph five of the Cruise Ticket Contract states:

> All arrangements made for or by Passenger before, during or after the Cruise or Cruise Tour of any kind whatsoever, as well as air arrangements, shore excursions, tours, hotels, restaurants, attractions and other similar activities or services, including all related conveyances, products or facilities, are made solely for Passenger's convenience and are at Passenger's risk. The providers, owners and operators of such services, conveyances, products and facilities are independent contractors and are not acting as agents or representatives of Carrier. In no event shall Carrier be liable for any loss, delay, disappointment, damage, injury, death or other harm whatsoever to Passenger which occurs on or off the Vessel or the Transport as a result of any acts, omissions or negligence of any independent contractors.

Mr. Wolf decided to go on a zip line shore excursion after viewing a brochure on the subject and talking with Ms. Falor, who had previously participated in a zip-line excursion while a passenger on a different cruise ship. Def.'s Statement Undisputed Facts ¶ 8; Pl.'s Resp. ¶ 8. He purchased his shore excursion ticket at the Shore Excursion Desk aboard the cruise ship and was issued a ticket, which stated that the tour would be operated by The Original Canopy Tours ("OCT") and included the following disclaimer:

> The arrangements set forth on this ticket for transportations, excursions, ground tours, restaurants or similar activities or services are made solely for the convenience of the ticket holder and are at the ticket holder's risk…The providers of such services are independent contractors and are not acting as agents or representatives of Royal Caribbean Cruises Ltd., Celebrity Cruises Inc. or Royal Celebrity Tours, Inc., or their

2

> respective affiliates or subsidiaries (collectively "RCCL"). In no event shall RCCL be liable for any accident or harm to ticket holders, which occurs as a result of any acts, omissions or negligence of any independent contractors. Def.'s Statement Undisputed Facts ¶¶ 10-13.

Prior to participating in the zip line portion of the excursion, Mr. Wolf also executed a liability waiver provided by OCT, which expressly released OCT and Celebrity from all liability for personal injury or wrongful death that may occur as a result of the excursion and disclosed that the zip line excursion was owned and operated by OCT and not Celebrity. *Id.* at ¶¶ 14-15. The participants also received instructions on how to position their body and legs when on the zip line. OCT guides instructed them to keep their legs straight out in front of their bodies when approaching the receiving platform at each traverse, even when facing backwards. *Id.* at ¶ 29. While Ms. Falor remembers receiving such instruction and Mr. Stephen Gilbert, another guest on the tour, approached the platform in a seated position with his legs up, Mr. Wolf testified that he did not remember if he received such instruction; he only remembers being instructed to "raise [his] feet and land on the platform." Pl.'s Resp. ¶ 29. However, Mr. Wolf also testified that as he was approaching the receiving platform, he could not remember if he raised his legs, but he knew he was supposed to lift his legs. Wolf Dep. 82:4-11.

Mr. Wolf further testified that while zip lining, he was mostly up in the trees, moving from platform to platform. *Id.* at 80:15-19. However, when he was injured, he was moving from a platform in the trees to a platform on the ground. *Id.* at 80:21-24. Mr. Wolf had successfully completed a number of zip line runs before he was injured while traveling down a longer traverse, backwards, and at a high speed. *Id.* at 81:7-10 – 82:3. He alleges that he was not stopped, caught, delayed, or otherwise slowed down in any manner near the end of the zip line when his left leg struck the receiving platform. *Id.* at 82:25-83:1-3; Def.'s Statement Undisputed Facts ¶ 16. He testified that he was traveling at what he perceived to be a high speed, and that he could not slow himself down because of the intense heat coming off of the zip line. Wolf Dep. 82:18-24. He was wearing a pair of leather gloves, but testified that "they were not thick enough to stop the heat from coming through when…sliding down the line." *Id.* at 111:14-23. A video of the incident shows that Mr. Wolf failed to lift his legs as he approached the platform. Def.'s Statement Undisputed

Facts ¶ 31.

### b. *Celebrity's Selection and Retention of the OCT Zip Line Tour*

According to Celebrity's representatives, excursion tour operators that wish to have Celebrity promote and sell their tours to cruise passengers must first participate in a bidding process wherein they submit a proposal detailing their shore excursion and proposed price. Campos Dep. 13:13-18. Celebrity then sends representatives to each tour operator to experience the tour and look into the operator's safety ratings. These representatives, known as shore excursion managers, routinely visit potential shore excursion sites with a checklist, making sure that potential shore excursion operators meet industry standards. *Id.* at 24:17-25:4; 43:20-44:4. After considering these and other factors, Celebrity chooses the tour operator it is most satisfied with. *Id.* at 13:20-14:6. Celebrity and the tour operator then enter into a contract, the Tour Operator Agreement, delineating the nature and scope of their relationship. *Id.* at 29:10-30:6. This Agreement specifies in part: "Operator's relationship with Cruise Line during the term of this agreement shall be that of an Independent Contractor"; "Nothing related in this agreement shall be construed as constituting Operator and Cruise Line as partners…principal and agent or joint venture between the parties hereto"; and "Other than as expressly set forth herein, this Agreement shall not be deemed to provide third parties with any remedy, claim, right or action or other right." Def.'s Mot. Summ. J., Ex. H.

Celebrity has been offering the OCT shore excursion to its passengers since 2001. *Id.* at 38:19-39:3. According to its corporate representative, Celebrity found this excursion suitable to promote and sell for a number of reasons. First, Celebrity has offered this shore excursion in Costa Rica through OCT for over ten years without any safety concerns or issues. *Id.* at 23:8-14. Second, the feedback and comments Celebrity received from passengers who participated in OCT's excursions were never negative. *Id.* at 22:13-14. Third, OCT "wrote the book on zip lining" and is well known in the industry. *Id.* at 16:12-18. From Celebrity's perspective, OCT "created the zip lining [in Costa Rica]" and therefore provided "the highest standard, because they're the ones who started it." *Id.* at 23:3-14. Fourth, numerous other cruise lines, as well as individual tourists to Costa Rica interested in zip lining, seek out OCT. *Id.* Fifth, to Celebrity's knowledge, there were no reported incidents of prior problems with the subject zip lining excursion, no safety concerns

4

about the tour, and no complaints from the same day as Mr. Wolf's accident. *Id.* at 22:14-15; 56:7-16.

As soon as Celebrity began offering the OCT zip line tour to its passengers, it conducted regular inspections of the zip line operation, but also relied on the tour operator to conduct its own in depth safety inspection. *Id.* at 17:3-14. Celebrity's inspectors participate in the excursion on a monthly basis to ensure that the tour is "running properly and that there's no concerns, there's no injuries, there's no safety concerns in general." *Id.* at 17:15-18:5. One week prior to the subject incident, a Celebrity employee visited OCT and prepared a shore excursion evaluation, which did not indicate that the tour had any serious issues and did not note any of the dangers or problems with the course that Mr. Wolf's expert, Timothy Kempfe, pointed out in his report (shoddy equipment, lack of safety bumper on the subject platform, etc.). *Id.* at 21:5-9; Pl.'s Resp., Ex. 1.

## II. LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or

unnecessary will not be counted." *Id.* at 248.  Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"For factual issues to be considered genuine, they must have a real basis in the record...mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### III. DISCUSSION

Plaintiff asserts counts of negligence, apparent agency, joint venture, actual agency, and breach of third party beneficiary contract against Defendant Celebrity.[1]  In response, Defendant Celebrity argues that Plaintiff is unable to establish the elements of the above counts, and therefore summary judgment is appropriate.  I agree with Defendant Celebrity and will address each count in turn.

As a preliminary matter, I note that federal maritime law applies to actions arising from alleged torts "committed aboard a ship sailing in navigable waters." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989).  This principle extends to torts occurring at offshore locations or ports-of-call during the course of a cruise.  *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir. 2004); *see also Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236 (S.D. Fla. 2006) (applying federal maritime law in negligence action against cruise line company stemming from accident occurring during an offshore

---

[1] Plaintiff originally brought suit against both Celebrity and OCT.  However, in my Order Granting Defendant's Motion to Quash and Motion to Dismiss (ECF No. 46), Plaintiff's Complaint as against Defendant OCT was dismissed with prejudice.

excursion).

Additionally, to the extent that Celebrity argues that the disclaimer provisions in the Cruise Ticket Contract, shore excursion ticket, and the OCT liability waiver are binding disclaimers that absolve it from any liability for the alleged injuries sustained by Mr. Wolf, those arguments are foreclosed by 46 U.S.C. § 30509 (formerly codified as 46 U.S.C. § 183c), which states in relevant part:

> The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting…the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents. § 30509(a)(1)(A).

A provision in a passenger contract or disclaimer form attempting to limit a carrier's liability as described above is deemed void. *See* 46 U.S.C. §30509(a)(2). This statutory prohibition applies to passenger cruise ship companies attempting to disclaim or limit their liability for injuries to passengers based upon their own negligence. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335-36 (11th Cir. 1984) (former "§ 183c expressly invalidates any contract provision purporting to limit a ship's liability for negligence to its passengers"); *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1355 (S.D. Fla. 2009) ("It is well settled that the owner of a passenger vessel may not contractually limits its own liability for its own negligence.") (citing *Kornberg*). Although this action stems from injuries allegedly sustained during an off-shore excursion tour owned and operated by OCT, an independent third-party company, Mr. Wolf contends that Celebrity itself was negligent in failing to warn of dangerous conditions on the zip line tour and that it negligently selected and/or retained OCT as an independent contractor. These claims of negligence asserted against Celebrity, a common carrier, fall within the parameters of § 30509 and its prohibitions against disclaimers. There is no exception in the statute for claims based on events or omissions occurring in the midst of a voyage but at an offshore location. *See Fojtasek*, 613 F. Supp. 2d at 1355 (denying motion to dismiss negligence claims against a cruise ship for its own negligence in selecting a shore excursion operator and in failing to warn the plaintiff of dangers in the shore excursion because "[i]t is well settled that the owner of a passenger

7

vessel may not contractually limit its own liability for its own negligence") (internal citations omitted).

### A. Count I: Negligence

"A negligence claim requires a plaintiff to show that (1) defendants owe plaintiffs a duty, (2) defendants breached the duty, (3) defendants' breach injured plaintiffs, and (4) plaintiffs' damage was caused by the injury to the plaintiff as a result of the defendant's breach of duty." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (internal quotation marks and alterations omitted); *see also Isbell*, 462 F. Supp. 2d at 1236 ("To satisfy the burden of proof in a negligence action, plaintiff must show: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages."); *John Morrell & Co. v. Royal Caribbean Cruises, Ltd.*, 534 F. Supp. 2d 1345, 1351 (S.D. Fla. 2008) (same). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell*, 462 F. Supp. 2d at 1236-37.

Celebrity does not contest that it owed a duty of care to Plaintiff. Indeed, "[i]t is a settled principle of maritime law that a shipowner owes passengers the duty of exercising reasonable care under the circumstances." *Id.* at 1237 (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959); *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40 (S.D. Fla. 1986)). Rather, Celebrity contends that it cannot have breached its duty because it had no duty to warn Mr. Wolf of dangers of which it knew or should have known about because it had no actual or constructive notice of the risk creating condition. Additionally, Celebrity argues that to the extent that Mr. Wolf argues that Celebrity is liable for the negligent hiring or retention of an independent contractor, that claim fails as well.

#### a. Duty to Warn

The duty of care owed by a shipowner to its passengers of "ordinary reasonable care under the circumstance…requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. Therefore, generally, in order to prove that a defendant breached its duty of care, a plaintiff must show that: (1) a dangerous condition existed and (2) that defendant had actual notice of the dangerous condition. *See id.* This duty includes a duty to warn passengers of

dangers the cruise line knows or reasonably should have known. *See Goldbach v. NCL (Bahamas) Ltd.*, Case No. 06-21248-Civ-Huck, 2006 WL 3780705, at *2 (S.D. Fla. Dec. 20, 2006). The duty to warn extends "beyond the port" to "place[s] where the passenger is invited to, or reasonably may be expected to visit." *Carlisle v. Ulysses Line Ltd.*, 475 So. 2d 248, 249 (Fla. 3d DCA 1985). A dangerous condition is one that is not apparent and obvious to the passenger. *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2009). However, the mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition. *See Isbell*, 462 F. Supp. 2d at 1237.

Celebrity argues that it had no duty to warn Mr. Wolf of the alleged dangers existing at OCT's zip line tour because it had no notice that the zip line tour posed an unreasonable risk of harm. Mr. Wolf argues that he does not need to prove notice in order to show negligence because Celebrity created the unsafe or forseeably hazardous condition by knowingly selecting an excursion company that employed unsafe practices. However, Mr. Wolf has not referenced any evidence in the record to support his argument regarding Celebrity's knowledge of OCT's allegedly unsafe practices except for the opinions of his purported expert, Timothy Kempfe. According to Mr. Kempfe, Celebrity's website, which states, "only go on approved Celebrity Cruise Line excursions," misrepresents the zip line excursion because Celebrity did not conduct inspections according to the Association for Challenge Course Technology (ACCT) standards. However, Mr. Wolf has not cited to any authority—nor is there any that I have found—indicating that Celebrity was bound to inspect OCT facilities in Costa Rica according to ACCT standards, or any other standard for that matter. Additionally, the record reflects that Celebrity had only positive information about OCT; there is no record evidence (e.g. accident reports, negative passenger reviews) that Celebrity received any form of notice regarding the existence of any alleged dangers on the excursion. In fact, just one week prior to the incident at issue, a Celebrity employee visited the OCT zip line excursion site and prepared a shore excursion evaluation that did not indicate any safety issues. Therefore, Mr. Wolf has failed to demonstrate that Celebrity created any unsafe conditions or was on notice of any unsafe conditions, and thus cannot make out his claim for negligence as against Celebrity.

### b. *Negligent Hiring and Retention*

Mr. Wolf also asserts that Celebrity was negligent in hiring and retaining OCT as an independent contractor to offer its zip line tour to its passengers. Although cruise shipowners cannot be held vicariously liable for the negligence of an independent contractor, it is well established that they may be liable for negligently hiring or retaining a contractor. *See In re Central Gulf Lines, Inc.*, 176 F. Supp. 2d 599, 622 (E.D. La. 2001) ("Absent any negligence on the part of the shipowner in selecting the independent contractor or in continuing to use the independent contractor, such as a ship's physician, the carrier cannot be held liable for the independent contractor's negligence.") (citing *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1372 (5th Cir. 1988)); *see also Jackson v. Carnival Cruise Lines, Inc.*, 203 F. Supp. 2d 1367, 1374 (S.D. Fla. 2002) (recognizing a cause of action against a shipowner for negligent selection of a physician, who is an independent contractor).

Under Florida law, "a principal may be subject to liability 'for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) perform any duty which the employer owed to third persons.'" *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011) (citing *Suarez v. Gonzalez*, 820 So. 2d 342, 345 (Fla. 4th DCA 2002) (quoting Restatement (Second) of Torts § 411 (1965))). Where such a duty exists, a plaintiff bringing a claim for negligent hiring or retention of an independent contractor must prove that "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiffs injury." *Id.* (citing *Davies v. Commercial Metals, Co.*, 46 So. 3d 71, 73-74 (Fla. 5th DCA 2010)).

The relevant inquiry here, as in *Smolnikar*, is whether Celebrity diligently inquired into OCT's fitness so that it can be argued that it either knew or should have known of OCT's alleged incompetence. *See id.* at 1319 (citing *Jackson*, 203 F. Supp. 2d at 1374 (shipowner's duty to use reasonable care in selecting a competent independent contractor for the ship's medical staff is "'sufficiently fulfilled when the physician's fitness is diligently inquired into'")). I find that Celebrity's inquiries were diligent and that its decisions were

reasonable. Celebrity has provided, through the testimony of its representative, multiple reasons why it found OCT to be a competent and suitable zip line excursion operator. Those reasons include OCT's general reputation in the world of zip lining, positive customer feedback, and a lack of any negative incident reports, among others. Mr. Wolf again attempts to advance arguments regarding Celebrity's failure to meet "industry standards" when evaluating OCT, but fails to provide any citation, to the record or otherwise, to support his arguments. Additionally, he attempts to draw a distinction between "inspections" and "evaluations," arguing that while Celebrity evaluated OCT, it never inspected OCT. However, this is a false distinction that has no real legal merit, especially because Mr. Wolf cannot cite to any cases that require a shipowner to conduct its own inspections of its independent contractor's excursion tour operations. And, even if the law did impose a duty to inspect on Celebrity, the record clearly reflects that Celebrity diligently inquired into OCT's fitness as a zip line excursion provider and continued to assess OCT's fitness once their relationship had been established.

Therefore, based on the record, Mr. Wolf has not presented sufficient evidence to allow a reasonable jury to find that Celebrity negligently hired and/or retained OCT as an independent contractor. The record clearly reflects that Celebrity's selection of OCT was based upon several considerations and factors, and there is no evidence indicating that the decision-making process was deficient or that Celebrity had reason to conduct its own inspections.

### B. Count III: Apparent Agency

While not a cause of action on its own, Mr. Wolf's apparent agency claim alleges negligence on an agency theory of liability. Apparent agency is established with the following three elements: "first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014) (citation omitted). In applying this principle, "it is the manifestation by the cruise ship to the third party that is controlling." *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371-72 (S.D. Fla. 2005). However, "the doctrine of apparent agency allows a plaintiff to sue a principal for the misconduct of an independent contractor

who only reasonably appeared to be an agent of the principal." *Franza*, 772 F.3d at 1249 (citation omitted).

      Mr. Wolf contends that Celebrity represented to its passengers that OCT was acting for the benefit of Celebrity by: (1) providing passengers with brochures and other online information that marketed the OCT excursion as an "integral part of the 'cruise ship experience'"; (2) maintaining a shore excursion desk on board the ship that promoted and advertised the OCT excursion; (3) failing to identify that OCT, and not Celebrity, owned the excursion when marketing the excursion to passengers; (4) charging passengers for excursions booked through their onboard accounts; and (5) using cruise ship employees to direct passengers to the buses that would take them to the excursion. Mr. Wolf relies on the Eleventh Circuit's reasoning in *Franza*, regarding a cruise ship's vicarious liability for the negligence of its on board medical staff, in support of his argument that Celebrity represented to its passengers that OCT was its agent. However, the facts at hand are easily distinguishable from the facts in *Franza*, most notably because here, Mr. Wolf was presented with at least three disclaimers that expressly represented to him that offshore tour excursion operators were independent contractors and not agents or representatives of Celebrity. *See Peterson v. Celebrity Cruises, Inc.*, 753 F. Supp. 2d 1245, 1248 (S.D. Fla. 2010) (concluding that alleged manifestations by the cruise shipowner could not form the basis of a reasonable belief of an agency relationship with the ship's medical staff because of the "explicit agency disclaimer in the cruise ticket contract"). Therefore, there is no dispute of material fact as to whether there was an apparent agency relationship between Celebrity and OCT.

    **C. Count IV: Joint Venture**

      Mr. Wolf's joint venture cause of action advances an alternate theory of negligence liability as against Celebrity; namely, that because Celebrity and OCT were engaged in a joint venture, Celebrity is liable for OCT's alleged negligent conduct. In order for a joint venture to exist, a party must show: (1) the intention of the parties to create a joint venture; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter of the joint venture; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained. *See Hung Kang Huang v. Carnival Corp.*, 909 F. Supp. 2d 1356, 1361 (S.D. Fla. 2012) (citing *Skeen v. Carnival Corp.*, 2009 WL 1117432, at *3 (S.D. Fla. Apr. 24, 2009)).

      Celebrity argues that the parties never entered into a joint venture agreement and

that, in fact, the parties expressly agreed that their arrangement was not a joint venture in their Tour Operator Agreement. In opposition, Mr. Wolf contends that a consideration of the objective facts, without regard to the parties' stated relationship in the contract, indicates that Celebrity and OCT were engaged in a joint venture. While two parties can create a joint venture notwithstanding a prior written contract, with their intent inferred from their actual conduct, *see Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 208, 211 (11th Cir. 1991), the Agreement in this case clearly manifests Celebrity's intent that OCT not be construed as anything more than an independent contractor. *See Davidson v. Enstar Corp.*, 848 F.2d 574, 578 (5th Cir. 1988) (finding that the parties did not intend to create a joint venture based upon unambiguous language stating "it is not the intention of the parties hereto to create a partnership, association, trust, or other semblance of business entity") (internal quotation marks omitted). Therefore, summary judgment as to Mr. Wolf's joint venture claim is appropriate as he cannot establish all its necessary elements.

### D. Count V: Actual Agency

With this claim of actual agency, Mr. Wolf attempts to advance yet another theory of negligence liability against Celebrity. An actual agency relationship requires (1) an acknowledgment by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control over the agent's actions by the principal. *See Fojtasek*, 613 F. Supp. 2d at 1357. In support of his claim, Mr. Wolf argues that Celebrity entered into a contract with OCT that provided Celebrity with extensive control over the day-to-day operations of OCT, which he argues is determinative in this situation. More specifically, Mr. Wolf alleges that Celebrity imposed "various insurance, safety and service standard obligations on OCT" and "performed all billing, advertising, organizing, and direction of its passengers to the OCT." Compl. 23. In response, Celebrity argues that as the express terms of its Tour Operator Agreement demonstrate, it never intended to enter into an agency relationship with OCT.

The factors relied upon by Mr. Wolf in supporting his claim of actual agency are almost identical to those relied upon by the plaintiff in *Gayou v. Celebrity Cruises, Inc.* In that case, as here, the plaintiff offered only conclusory allegations regarding the cruise ship's control over the operations of the excursion company. *See Gayou v. Celebrity Cruises, Inc.*, 2012 WL 2049431, *10 (S.D. Fla. June 5, 2012) ("Gayou offers only the conclusory

13

allegation that 'Celebrity performed all billing, advertising, organizing, and direction of its passengers to [the excursion company]…[v]ery similar allegations have been deemed insufficient to support a claim of agency) (citations omitted). Here, Mr. Wolf has not cited to any record evidence to demonstrate the existence of an agency relationship. In fact, the existence of a contract between Celebrity and OCT clearly delineating OCT's role as an independent contractor plainly demonstrates, as a matter of law, that no agency relationship was intended or formed. *Id.* (citing *Jaar v. Univ. of Miami*, 474 So. 2d 239, 242 (Fla. 3d DCA 1985) (agency status in contract presents question of law for the court)). Therefore, Celebrity's motion for summary judgment on Mr. Wolf's actual agency claim is granted.

### E. Count VI: Breach of Third Party Beneficiary Contract

Mr. Wolf alleges that Celebrity and OCT entered into a contract that imposed a number of obligations upon OCT for the benefit of Celebrity's passengers, such as insurance, safety, and service standard obligations, and that both OCT and Celebrity breached the contract by failing to comply with those safety and service standard obligations. In response, Celebrity argues that although the contracted services were ultimately rendered by OCT, that fact does not make Mr. Wolf an intended beneficiary of the contract between OCT and Celebrity. Mr. Wolf was an incidental beneficiary of the contract at best; never an intended beneficiary.

To plead a breach of a third-party beneficiary contract, Plaintiff must allege (1) the existence of a contract to which Plaintiff is not a party; (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit Plaintiff; (3) breach of that contract by one of the parties; and (4) damages to Plaintiff resulting from the breach. *Lapidus v. NCL America LLC*, 924 F. Supp. 2d 1352, 1360–61 (S.D. Fla. 2013). For a third party to have a legally enforceable right under the contract, the benefit to the third party must be the "direct and primary object of the contracting parties." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). Third parties do not need to be specifically named in the contract to qualify as intended beneficiaries, as "long as the contract refers to a well-defined class of readily identifiable persons that it intends to benefit." *Belik v. Carlson Travel Group, Inc.*, 864 F. Supp. 2d 1302, 1312 (S.D. Fla. 2011) (internal citations omitted). However, the parties' intent to benefit the third party "must be specific and must be clearly expressed in the contract in order to endow the third party

beneficiary with a legally enforceable right," and "incidental or consequential benefit" to a third party is insufficient to sustain a claim. *Bochese*, 405 F.3d at 982.

The Tour Operator Agreement at issue here contains the following language with respect to third party beneficiaries: "Other than as expressly set forth herein, this Agreement shall not be deemed to provide third persons with any remedy, claim, right, or action or other right." Def.'s Mot. Summ. J., Ex. H. Through its express terms, no reading of that language would allow for a finding of either an express or implied intent by the parties to primarily or directly benefit Mr. Wolf. Not only does the contract expressly disclaim any intent to provide third parties with any rights, but there are no other provisions in the contract from which to infer any intent to directly benefit passengers like Mr. Wolf. Mr. Wolf argues that the requisite intent should be gleaned from contract provisions requiring OCT to acquire insurance before operating, but I disagree. Celebrity and OCT entered into an independent agreement which, by its terms, never intended to benefit Mr. Wolf.

## IV. CONCLUSION

Having reviewed the arguments and the record, I find that Plaintiff Mr. Wolf fails to establish his claims of negligence, apparent agency, joint venture, actual agency, or breach of third party beneficiary contract as against Defendant Celebrity. Essentially, Plaintiff fails to demonstrate that a genuine issue of material facts exists with regard to any of his remaining claims against Defendant. Accordingly, summary judgment in favor of the Defendant is appropriate.

It is, therefore, **ORDERED and ADJUDGED** that Defendant's Motion for Summary Judgment (ECF No. 65) is **GRANTED**. Plaintiff's Complaint is **DISMISSED**. All pending motions, if any, are **DENIED** *as moot*. A separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure shall issue concurrently.

**DONE and ORDERED** in chambers at Miami, Florida, this 30th day of April 2015.

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*